UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BONITA SALTZMAN,
        Plaintiff,

        v.                                          CIVIL ACTION NO.
                                                    11-10056-MBB
TOWN OF HANSON,
MICHAEL FINGLAS, SR.
and JEAN MARIE SMITH,
        Defendants.


**MEMORANDUM AND ORDER RE:**
**MOTION OF DEFENDANT, TOWN OF HANSON, FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 28);**
**MOTION OF DEFENDANTS, MICHAEL FINGLAS, SR., AND JEAN MARIE**
**SMITH, FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 30)**

**March 31, 2013**


**BOWLER, U.S.M.J.**

Pending before this court is a motion filed by defendant

Town of Hanson ("the Town") for summary judgment and a motion

filed by defendants Michael Finglas, Sr. ("Finglas") and Jean

Marie Smith ("Smith") (collectively "defendants") for summary

judgment.  (Docket Entry ## 28 & 30).  Plaintiff Bonita Saltzman

("plaintiff") opposes both motions.  On October 11, 2012, this

court held a hearing and took the motions (Docket Entry ## 28 &

30) under advisement.

PROCEDURAL HISTORY

The five count pro se complaint filed on December 16, 2010, sets out the following claims against defendants:  (1) a due process claim under 42 U.S.C. § 1983 ("section 1983") for refusing to produce transcripts of a municipal hearing (Count One); (2) wrongful termination (Count Two); (3) breach of the implied covenant of good faith and fair dealing (Count Three); (4) termination without just cause (Count Four); and (5) intentional infliction of emotional distress (Count Five).  On May 3, 2012, defendants filed an amended answer adding a statute of limitations defense.  (Docket Entry # 24).

The Town filed the summary judgment motion on June 29, 2012.  (Docket Entry # 28).  Finglas and Smith also filed a motion for summary judgment on June 29, 2012.  (Docket Entry # 30).  Accompanying both motions were memorandums of law in support of summary judgment and a joint statement of material facts pursuant to LR. 56.1.  (Docket Entry ## 29, 31 & 32).  Plaintiff filed an opposition to both motions on July 23, 2012, to which defendants filed a reply on August 2, 2012.  (Docket Entry ## 33 & 34).  Plaintiff filed an "answer & opposition" to defendants' reply.  (Docket Entry # 37).  On January 24, 2013, this court denied defendants' motion to strike the answer and

opposition but allowed them the opportunity to respond by
January 31, 2013.  Defendants did not file a response.

STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "A
dispute is genuine if the evidence about the fact is such that a
reasonable jury could resolve the point in the favor of the non-
moving party."  Am. Steel Erectors, Inc. v. Local Union No. 7,
Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron
Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if
it carries with it the potential to affect the outcome of the
suit under the applicable law."  Id.

Facts are viewed in favor of the non-movant.  Noonan v.
Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009).  "Where, as here,
the non-movant has the burden of proof and the evidence on one
or more of the critical issues in the case is not significantly
probative, summary judgment may be granted."  Davila v.
Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9,
12 (1st Cir. 2007); accord Clifford v. Barnhart, 449 F.3d 276,
280 (1st Cir. 2006) (if moving party makes preliminary showing,
non-moving party must "produce specific facts, in suitable
evidentiary form, to establish the presence of a trial worthy

issue" with respect to each element on which he "would bear the burden of proof at trial").

Defendants submit a LR. 56.1 statement of undisputed facts. Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts the plaintiff failed to controvert); Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 (1st Cir. 2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'").

FACTUAL BACKGROUND

Plaintiff worked for the Town's Multi Service Center ("the Senior Center") as the Assistant Supportive Day Program Coordinator from October 2004 until December 17, 2008.  (Docket Entry # 1) (Docket Entry # 32, Ex. 1, pp. 11-17).  The Supportive Day Program provides services for elderly clients, most of whom suffer from Alzheimer's or another form of dementia.  (Docket Entry # 32, Ex. 2 & 9).  Smith served as

Director of Elder Affairs the entire time plaintiff was employed at the Senior Center and was responsible for the management of the Senior Center.  (Docket Entry # 1).  Diane McCarey ("McCarey") was the Supportive Day Program Coordinator and plaintiff's immediate supervisor throughout her employment. (Docket Entry # 32, Ex. 1, p. 17).

The Town is a municipal corporation governed by a five member Board of Selectmen ("the Board").  (Docket Entry # 32, Ex. 6).  At the time of plaintiff's termination, the Board consisted of Chairman James A. Egan ("Egan"), Vice Chairman Christopher L. Colclough ("Colclough"), James E. Armstrong ("Armstrong"), Stephen M. Amico ("Amico") and Donald H. Howard ("Howard").  (Docket Entry # 1).  The Board is the appointing authority for plaintiff's position of Assistant Supportive Day Program Coordinator at the Senior Center.  (Docket Entry # 32, Ex. 6).  It also served as the Personnel Board of the Town. (Docket Entry # 32, Ex. 10).

Finglas served as the Town Administrator for the duration of plaintiff's employment at the Senior Center.  (Docket Entry # 1, Ex. 1; Docket Entry # 32, Ex. 8).  As Town Administrator, he also served as the Personnel Director of the Town and was responsible for the administration of all personnel matters.[1]

---

[1] As set out in the by-laws:

(Docket Entry # 32, Ex. 10).  The Town Administrator was responsible for making any necessary recommendations to the Board about the dismissal of employees whose positions fell under the Board's jurisdiction.  (Docket Entry # 32, Ex. 1, p. 138).  The Assistant Supportive Day Program Coordinator position, plaintiff's position, fell under the jurisdiction of the Board.  (Docket Entry # 32, Ex. 9).

Section 8G of the Town's personnel classification and compensation by-law allows termination of an employee "for just cause."  (Docket # 32, Ex. 10).  In particular, the by-law states:

> an employee may be terminated from employment by the Town Administrator for just cause after the employee has been given written warning by the Department Head, fails to show adequate improvement in work performance during the warning period and the relevant appointing body votes affirmatively for termination.

(Docket Entry # 32, Ex. 10).  Prior to discharge of an employee recommended for termination, the Board conducts a hearing to review the recommendation to terminate.  (Docket Entry # 32, Ex. 10 & 11).  As noted above, if the Board voted affirmatively in

---

> The Town Administrator shall serve as Personnel Director of the Town and be responsible for the administration of all personnel matters, including by-laws and all personnel policies and regulations that the Board of Selectman may adopt, including the enforcement of such personnel policies, rules and regulations.

(Docket Entry # 32, Ex. 10, § 2B).

favor of termination, the Town Administrator may terminate the employee for "just cause."  (Docket Entry # 32, Ex. 10).

On June 19, 2008, an incident occurred at the Senior Center during which a client wandered away ("the missing client incident").  (Docket Entry # 32, Ex. 1, pp. 59-62 & 67).  The police were called and a search commenced.  (Docket Entry # 32, Ex. 1, pp. 59-62).  The client was eventually found in the Town library next door to the Senior Center a few hours later.  (Docket Entry # 32, Ex. 1, pp. 59-62).  During the time the client went missing, plaintiff had left the Senior Center and gone to the same library to renew her library books.  (Docket Entry # 32, Ex. 1, pp. 59-62).

Plaintiff's job description includes "providing assistance to the Supportive Day Program Clients to [the] Senior Center Van."  (Docket Entry # 32, Ex. 13).  A November 2007 memorandum to staff from McCarey dictates that all clients are assisted to vans.  (Docket Entry # 32, Ex. 4).  This entails "one person to assist with the van [and wait] until van leaves" and another person "stay[ing] with the SDC[2] Program."  (Docket Entry # 32, Ex. 3).  Plaintiff testified that a "verbal directive" required escorting clients to the van but did not designate the individual responsible.  (Docket Entry # 32, Ex. 1, pp. 62-67).

---

[2]  SDC is an acronym for the Supportive Day Center Program at the Senior Center.

She also remembered that McCarey passed out "literature" during a 2007 staff meeting "that said the aide shall go to the van." (Docket Entry # 32, Ex. 1, pp. 62-67).  Plaintiff testified that she handled the matter appropriately because she had informed another staff member that she was leaving the floor to renew her library books so that staff member was therefore the individual responsible for the clients at the time of the missing client incident.  (Docket Entry # 32, Ex. 1, pp. 62-67).  As a result of the incident, Smith issued plaintiff a written warning on June 24, 2008, informing her that if there were any more infractions she would be recommending plaintiff's dismissal to the Town Administrator.  (Docket Entry # 32, Ex. 14).

In a letter dated July 8, 2008, to plaintiff, McCarey gave plaintiff a written warning about two complaints she had received about plaintiff from the staff at the Senior Center. (Docket Entry # 32, Ex. 19).  The complaints involved plaintiff delegating her clients and duties to other staff members and wandering away from the floor.  (Docket Entry # 32, Ex. 19).[3] Plaintiff was issued another written warning from Smith on July 18, 2008, advising her not to discuss details of personnel meetings with other staff members and clients at the Senior

---

[3]  At her deposition, plaintiff states that she did not see this written warning until she received a copy of her personnel folder.  She also testified that the date on the warning should be August 8 not July 8, 2008.

Center.  (Docket Entry # 32, Ex. 15).  The memorandum states that plaintiff discussed a personnel meeting held on July 7, 2008, regarding the June 24, 2008 written warning on the floor with other staff members in front of clients.  (Docket Entry # 32, Ex. 15).  The memorandum also notes that this behavior had been discussed previously, which plaintiff disputes, and was unacceptable.  (Docket Entry # 32, Ex. 15).

On July 31, 2008, Smith sent a written warning to plaintiff informing her that personal items could not be delivered to work at any time.  (Docket Entry # 32, Ex. 16).  Plaintiff testified that she was never given this written warning and only saw it when she received a copy of her personnel folder.  (Docket Entry # 32, Ex. 1, pp. 74-77).  The written warning came as a result of an incident involving a potential delivery to the Senior Center of a "pot grinder," which plaintiff explained was used to grind marijuana buds ("pot grinder incident").  (Docket Entry # 32, Ex. 1, pp. 74-80 & Ex. 16).  Plaintiff heard her daughter speaking on the telephone that the pot grinder was being delivered to the Senior Center.  (Docket Entry # 32, Ex. 1, pp. 74-80).  Plaintiff had a conversation with Karyn Ken ("Ken") about the delivery of the pot grinder to the Senior Center. (Docket Entry # 32, Ex. 1, pp. 74-80).  Plaintiff testified that the pot grinder was ordered by her daughter and for her

daughter's friend, not for plaintiff.  (Docket Entry # 32, Ex. 1, pp. 74-80).

On August 25, 2008, there was an incident where McCarey claims that plaintiff arrived at work smelling of marijuana ("the marijuana incident").  (Docket Entry # 32, Ex. 1, pp. 81-83 & Ex. 17).  McCarey's notes for this date state that plaintiff arrived at work smelling of marijuana and that she has noticed plaintiff smelling of marijuana "many times."  (Docket Entry # 32, Ex. 17).  McCarey further states that she told plaintiff to go outside and air out her clothes and warned plaintiff that she cannot come to work "smelling of pot." (Docket Entry # 32, Ex. 17).  Plaintiff admits that there was an incident where she came into work smelling of marijuana. (Docket Entry # 32, Ex. 1, pp. 81-83 & 183).  During her deposition, plaintiff denied smoking marijuana on this occasion but claimed to have been around someone else who was smoking marijuana on that occasion.  (Docket Entry # 32, Ex. 1, p. 82). She did admit to smoking marijuana in the past.  (Docket Entry # 32, Ex. 1, pp. 82 & 182).

On August 28, 2008, another written warning was given to plaintiff about not having personal items delivered to the Senior Center.  (Docket Entry # 32, Ex. 18).  Smith issued the warning after a bank statement was delivered to the Senior

Center for plaintiff.  (Docket Entry # 32, Ex. 18).  At her deposition, plaintiff testified that Smith never discussed with staff not to receive personal mail or packages at work.  (Docket Entry # 32, Ex. 1, p. 80).

On September 9, 2008, Finglas placed plaintiff on administrative leave after an incident occurred between plaintiff and McCarey in a public area at the Senior Center. (Docket Entry # 32, Ex. 1, p. 114).  Although the details of the incident are disputed, the incident involved a "discussion" on the floor between McCarey and plaintiff about another Senior Center employee, Donna Baker ("Baker").  (Docket Entry # 32, Ex. 1, p. 114 & Ex. 17).  Plaintiff agrees that an incident occurred on this date and that she apologized to clients at the Senior Center about the incident.  (Docket Entry # 32, Ex. 1, pp. 185-187).  Plaintiff also suggested to McCarey that she do the same. (Docket Entry # 32, Ex. 1, pp. 185-187).  Smith recalled that "staff members" reported to her a "disagreement on the floor" involving plaintiff.  (Docket Entry # 32, Ex. 21).  Smith spoke to plaintiff and plaintiff was then asked to leave the Senior Center on paid administrative leave.  (Docket Entry # 32, Ex. 1, pp. 185-187).  Plaintiff returned to the Senior Center later in the day and requested a copy of her personnel folder.  (Docket Entry # 32, Ex. 1, pp. 185-187).

On September 10, 2008, Smith requested that Finglas terminate plaintiff from her position at the Senior Center. (Docket Entry # 32, Ex. 22).  Plaintiff telephoned McCarey on or about September 16, 2008, and they discussed various matters pertaining to the Senior Center.  (Docket Entry # 32, Ex. 1, pp. 106-110 & Ex. 23).  By letter dated September 19, 2008, Finglas advised plaintiff not to:  visit the Senior Center; contact the Senior Center by telephone; contact any employees or clients of the Senior Center to discuss plaintiff's ongoing disciplinary matter; and attempt to influence "the truthful cooperation of any witness in the disciplinary matter."  (Docket Entry # 32, Ex. 24).

On October 13, 2008, plaintiff hand delivered a letter to each member of the Board addressing her administrative leave, the incident on September 9, 2008, three falsified documents in her personnel folder and certain actions taken by Smith. (Docket Entry # 32, Ex. 7).  As stated in the letter, plaintiff enclosed some "very serious documentation" and attached a letter from Attorney Callanan on Smith's behalf to Finglas addressing "certain statements of a sexual nature that [Finglas] made to [her] in [Finglas'] office on August 3, *2005*" which were "unwelcome and very offensive to Ms. Smith."  (Docket Entry # 32, Ex. 7) (emphasis added).  Plaintiff's letter concluded with

a request to appear before the Board to discuss her employment
status.  (Docket Entry # 32, Ex. 7).  Plaintiff also sent copies
of the letter to Attorney General Martha Coakley, District
Attorney Timothy Cruz and the State Ethics Commission.  (Docket
Entry # 32, Ex. 7).

During plaintiff's paid administrative leave, Finglas
conducted an investigation about the complaints of plaintiff's
work conduct and performance.  (Docket Entry # 32, Ex. 8 & 9).
On October 20, 2008, plaintiff received a written notice of a
hearing from Finglas.  (Docket Entry # 32, Ex. 2).  The notice
advised plaintiff that the hearing would take place on October
28, 2008, and could result in his recommendation for her
dismissal.  (Docket Entry # 32, Ex. 2).  The letter informed
plaintiff of the charges and directed her to attend the hearing
and provide information related to the charges.  (Docket Entry #
32, Ex. 2).  Prior to the hearing, plaintiff provided the Town
with a list of witnesses, including several Town employees, who
the Town made available for the hearing.  (Docket Entry # 32,
Ex. 1, pp. 133-135).

The letter sets out the following four charges:  (1)
plaintiff "neglected [her] duties on June 19, 2008 and caused a
Supportive Day Program elderly client to be lost for almost two
hours"; (2) plaintiff "openly admitted to smoking marijuana,"

plaintiff came to work smelling like she had smoked marijuana and before being stopped plaintiff "had arranged to have a 'pot grinder' delivered to [her] at the Multi-Service Senior Center"; (3) plaintiff "repeatedly abused break times and left clients unattended so that [she] could smoke cigarettes and socialize, causing management to have to put all Monday-Thursday staff on a set schedule for breaks";[4] and (4) while on paid administrative leave, plaintiff "made a harassing phone call to Ms. McCarey at work." (Docket Entry # 32, Ex. 2).  The letter also advised plaintiff "that any single charge or any combination of the charges set forth below, if proven, could result in your dismissal." (Docket Entry # 32, Ex. 2).  On October 27, 2008, Finglas amended the notice in a letter to plaintiff by adding a charge that plaintiff violated the September 19, 2008 directive not to contact the Senior Center or any of its employees or clients about the disciplinary action.  (Docket Entry # 32, Ex. 25).

    As part of Finglas' investigation, on November 3 and 6, 2008, he conducted a hearing.  The Town's Labor Counsel presented evidence related to the charges at the hearing.

--------

[4]  In reference to this charge, the letter further notes that plaintiff "then began to show up on Friday, when [she was] not scheduled to work, and disrupt activities at the center by confronting management and staff[,] including in front of clients and the public[,] as to why Friday staff was not on a break schedule."

(Docket Entry # 32, Ex. 1, pp. 86, 132, 150 & Ex. 9).  Plaintiff testified at the hearing, offered documentary evidence, presented all of the witnesses of her choosing and asked questions of all of the witnesses.  (Docket Entry # 32, Ex. 1, pp. 143, 171-177 & 180-182).

Plaintiff represented herself at the hearing.  (Docket Entry # 32, Ex. 1, pp. 129-133 & 180).  At her deposition, plaintiff also noted she had hired an attorney after receiving notice of the hearing.  (Docket Entry # 32, Ex. 1, pp. 129-133, 180 & Ex. 9).  The attorney requested a transcript of the hearing which was not available due to the absence of a stenographer.  (Docket Entry # 32, Ex. 1, pp. 147-150).

On December 8, 2008, Finglas issued a recommendation to Eagan as Chairman of the Board finding just cause to dismiss plaintiff and asked the Board to authorize him to dismiss her. (Docket Entry # 32, Ex. 26).  The 17 page, single space recommendation exhaustively details the five complaints lodged against plaintiff about her work conduct and performance. (Docket Entry # 32, Ex. 26).  Finglas found the first charge "substantiated" because plaintiff "was ultimately responsible for making sure that Ms. Foley and the other clients got safely on the van on June 19th" and plaintiff neglected these duties when "she left the clients at 2:55 p.m. to do a personal

errand." (Docket Entry # 32, Ex. 26). Finglas also found that plaintiff should have taken steps to have someone else take responsibility for getting the clients to the van if she was not going "to do so" and should not have assumed that someone else would take over this responsibility. (Docket Entry # 32, Ex. 26).

Finglas also found the second charge substantiated because plaintiff admitted to McCarey that she smoked marijuana in the past; she admitted coming to work smelling of marijuana on at least one occasion and was told to go outside and air out her clothing; and she told an administrative assistant at the time "that her daughter had ordered a pot grinder to be delivered to the Senior Center." (Docket Entry # 32, Ex. 26). Finglas found it unacceptable for "any employee, never mind a supervisor, to come to work smelling of marijuana."[5] (Docket Entry # 32, Ex. 26). Finglas found that there was just cause to dismiss plaintiff "for this conduct alone or in combination with her misconduct" with respect to the first charge. (Docket Entry # 32, Ex. 26).

---

[5]  The letter acknowledges plaintiff's contention that she advised others at the Senior Center that she had "stopped the plan" thus preventing the delivery from occurring. The letter notes, however, that plaintiff "left these details out of her discussion with [the administrative assistant]" thereby leaving the assistant "with the impression that a 'pot grinder' was on its way to [plaintiff] at the Senior Center." (Docket Entry # 32, Ex. 26).

As to the third charge, Finglas found that plaintiff's actions were confrontational and inappropriate on September 9, 2008, when she involved clients of the Senior Center in a dispute she was having with McCarey. (Docket Entry # 3, Ex. 26). Not only did plaintiff have the discussion on the floor of the Senior Center, which she had been told not to do previously, but she involved clients and told McCarey, in the presence of clients, that McCarey should apologize to them. (Docket Entry # 32, Ex. 26).

With respect to the fourth charge, Finglas found just cause to discipline plaintiff. (Docket Entry # 32, Ex. 26). He noted that the facts were not in dispute and that plaintiff telephoned McCarey after plaintiff's placement on paid administrative leave and hung up the telephone after stating, "How's your program running now? I think you need a few more volunteers!" (Docket Entry # 32, Ex. 26).

Finglas also found the fifth charge substantiated because plaintiff violated his directive in the September 19, 2008 letter to not attempt "to influence" the cooperation of any disciplinary hearing witnesses. (Docket Entry # 32, Ex. 26). The decision explains that plaintiff violated the directive by her communication with Baker on October 24, 2008. (Docket Entry # 32, Ex. 26). Finglas acknowledged that while there is just

cause for disciplinary action under both counts four and five,
neither count would constitute just cause for dismissal
separately.  (Docket Entry # 32, Ex. 26).

Plaintiff received a copy of the recommendation and written
notice that the Board would consider the matter on December 16,
2008 at 8:00 p.m.  (Docket Entry # 32, Ex. 26).  The December 8,
2008 written notice invited plaintiff "to attend and be heard on
the recommendation."  (Docket Entry # 32, Ex. 26).

On December 16, 2008, the Board conducted a hearing to
address the recommended dismissal.  (Docket Entry # 32, Ex. 28).
Plaintiff attended the hearing and various Board members
questioned her about each of the five charges while they were
under discussion.  (Docket Entry # 32, Ex. 28).  As set out in
the minutes of the meeting, plaintiff acknowledged that:  (1)
taking clients to the van was part of her responsibilities and
duties at the Senior Center and that she only "took 5 minutes at
the end of the day"; (2) she came to work smelling like
marijuana because her teenage daughter and some friends were
smoking it at her house; (3) on September 9, 2008, McCarey
approached her on the floor and "twisted the whole incident";
(4) plaintiff made a harassing telephone call to McCarey at the

Senior Center after her placement on administrative leave;[6] and
(5) she telephoned a Senior Center staff member at home
regarding testifying on her behalf.  (Docket Entry # 32, Ex.
28).  After the conclusion of plaintiff's statements, the five
member Board voted unanimously to affirm Finglas' recommendation
thereby giving him the authority to terminate plaintiff.
(Docket Entry # 32, Ex. 28).  In accordance with the Board's
decision, in a letter dated December 17, 2008, Finglas
referenced the Board's vote and terminated plaintiff's
employment effective as of that date.  (Docket Entry # 32, Ex.
29).

     Plaintiff filed a charge with the Massachusetts Commission
Against Discrimination ("MCAD") on or about December 10, 2009.
(Docket Entry # 32, Ex. 32).  The charge alleged she was
discharged from the Senior Center in retaliation for reporting
Finglas' inappropriate sexual behavior towards Smith to the
Board in the October 13, 2008 letter.  (Docket Entry # 32, Ex.
32).  The Town was the only named respondent in the MCAD charge.
(Docket Entry # 32, Ex. 32).  On July 30, 2010, the MCAD
dismissed the charge finding a lack of probable cause on July
30, 2010, based upon a failure to have engaged in a protected

---

[6]  The minutes reflect that plaintiff did not dispute the charge
but explained she had "been under a lot of stress."  (Docket
Entry # 32, Ex. 28).

activity and a lack of causation.  (Docket Entry # 32, Ex. 33).
Plaintiff filed this action on December 16, 2010.

DISCUSSION

The Town as well as Finglas and Smith separately seek
summary judgment on all counts.  This court turns first to the
Town's motion and thereafter Finglas' and Smith's motion.

I.  TOWN OF HANSON'S SUMMARY JUDGMENT MOTION

A.  Procedural Due Process (Count One)

The Town argues the procedural due process claim under
section 1983 is subject to summary judgment because plaintiff
was an employee at will.  (Docket Entry # 28).  According to the
Town, plaintiff failed to establish a constitutionally protected
right to continued employment and she received all of the
process to which she was due.  (Docket Entry # 28).

Plaintiff asserts the Town "denied her procedural due
process" when it refused to produce transcripts of the November
3 and 6, 2008 hearing and did not honor her "requests for these
transcripts."  (Docket Entry # 1).  Plaintiff submits she was
"denied the right to effective preparation for her dismissal
hearing before" the Board on December 16, 2008, because she was
denied the transcripts.  (Docket Entry # 1).  In addition,
plaintiff claims Finglas was biased and therefore not a neutral
decision maker.  (Docket Entry # 33).  Plaintiff generally

maintains that the Town's "purposeful and willful behavior denied her a valuable property right under the United States Constitution and the Massachusetts Declaration of Rights." (Docket Entry # 1).

In order to prevail under such a section 1983 claim, a plaintiff must establish "a constitutionally protected interest in his [or her] continued employment." Dasey v. Anderson, 304 F.3d 148, 156-157 (1st Cir. 2002). Specifically, "a public employee," such as plaintiff, "must first demonstrate that he [or she] has a reasonable expectation, arising out of statute, policy, rule, or contract, that he [or she] will continue to be employed." Wojcik v. Mass. Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002). If an employee has a stated property interest that rises to the level of a "legitimate claim of entitlement," the employee cannot be dismissed without being afforded due process. Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 9 (1978); Gomez v. Rivera Rodriguez, 344 F.3d 103, 111 (1st Cir. 2003). In the context of public employment, due process typically includes "some kind of hearing" and an "opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); accord Wojcik, 300 F.3d at 102.

1.  Establishing a Constitutionally Protected Right

As the non-moving party with the underlying burden of
proof, plaintiff must show sufficient evidence of a trial worthy
issue that she had a "reasonable expectation, arising out of a
statute, policy, rule, or contract that" she would "continue to
be employed."  Wojcik, 300 F.3d at 101.  Here, plaintiff
admitted she was an employee at will and that she could be fired
for "virtually anything."  (Docket Entry # 32, Ex. 1, p. 148).
Plaintiff also signed a pre-employment statement which
explicitly acknowledged that she understood "that [her]
employment and compensation can be terminated with or without
cause or notice, at any time at the option of either the Town or
[her]self."  (Docket Entry # 32, Ex. 36).  The document further
states that "no manager or representative of the Town, other
than the Selectmen, or specific Board or Department has any
authority to enter into any agreement with [her] for employment
for any specified period of time or to make any agreement
different from or contrary to the foregoing."  (Docket Entry #
32, Ex. 36).  This evidence eviscerates any reasonable basis of
continued employment.

There is no evidence that plaintiff had a written
employment contract preventing termination or setting out a
specific time period of employment.  Such facts, combined with
plaintiff's admission that she understood she could be

terminated with or without cause or notice at any time,
establishes that she had no reasonable basis to believe her
employment would continue.  Accordingly, plaintiff has no
constitutionally protected property right that was violated by
the Town or any other defendant.  See Concepcion Chaparro v.
Ruiz-Hernandez, 607 F.3d 261, 264 (1st Cir. 2010); Wojcik, 300
F.3d at 101.

> 2.  Plaintiff Received Due Process

In addition to a constitutionally protected property
interest in continued employment, a plaintiff must show that
defendants denied her due process.  Gomez, 344 F.3d at 111.  In
the alternative, the Town therefore contends plaintiff failed to
show a denial of due process.  (Docket Entry # 28).

Plaintiff's due process challenge to the procedure she
received is twofold.  First, she maintains that Finglas was not
a neutral decision maker.  (Docket Entry # 33).  In particular,
she argues that Finglas was biased because of her October 13,
2008 letter to the Board in which she attached the 2005
complaint showing Finglas' inappropriate sexual misconduct with
Smith.  (Docket Entry # 33).  Second, she claims a
constitutional right to a stenographer or transcripts of the
November 3 and 6, 2008 hearing.  (Docket Entry # 33).

The nature of the process due depends upon the nature of

the proceeding.  Chmielinski v. Mass. Office of the Comm'r of
Probation, 513 F.3d 309, 316 (1st Cir. 2008).  A "termination
hearing is not a court of law, and the same level of process is
not required.  The Constitution requires only that [the
plaintiff] was provided notice and a meaningful opportunity to
respond."  Id.  In other words, "'the root requirement' of the
Due Process Clause is 'that an individual be given an
opportunity for a hearing before he is deprived of any
significant property interest'" and "an employee holding such an
interest in his employment must be afforded 'some kind of a
hearing' before he may be discharged."  Brasslett v. Cota, 761
F.2d 827, 836 (1st Cir. 1985) (quoting Loudermill, 470 U.S. at
542-46).

    With respect to plaintiff's neutrality argument, "there is
no requirement that the hearing officer be impartial; indeed,
the terminating employer may preside."  Chmielinski, 513 F.3 at
318 (examining procedures afforded Chief Probation Officer of
town during pre-termination hearing under Due Process
Clause).  Although Finglas' impartiality is not necessarily
required, the degree of his bias, assuming it exists, may be so
severe as to interfere with the due process afforded at the
hearings.  See Id. ("that impartiality is not demanded does not
itself determine whether bias can be so severe as to interfere

with due process at the hearing itself"). The employee's opportunity to set out his or her version of the factual events that led to the termination is an important concern in the calculus. Id. ("key concern in Loudermill was" employee's "opportunity to present his side of things to correct errors of fact on which the termination decision is based").

Here, plaintiff received ample opportunity to present her side of the story. After Smith recommended plaintiff's dismissal, Finglas conducted an adequate investigation, set out the charges and provided plaintiff a copy of the charges prior to the first hearing. Plaintiff received ample notice and an opportunity to be heard at the two day preliminary hearing on November 3 and 6, 2008, before the Board and Finglas. Plaintiff was also given the opportunity to be represented by counsel and the Town made available all of the witnesses she requested. (Docket Entry # 32, Ex. 1, pp. 133-135) (Docket Entry # 32, Ex. 2 & 25). She presented evidence in her defense, questioned witnesses and testified at the hearing. (Docket Entry # 32, Ex. 1, pp. 143, 171-177 & 180-182). After the hearing, Finglas issued a 17 page decision recommending the termination to the Board and provided plaintiff a copy of the recommendation. At the second hearing, plaintiff was able to present additional evidence, respond to the charges against her and answer

questions from the Board.  (Docket Entry # 32, Ex. 28).

Thereafter, the Board unanimously voted to authorize Finglas to

terminate plaintiff's employment.  (Docket Entry # 32, Ex. 28 &

29).  Finglas terminated plaintiff's employment by letter dated

December 17, 2008.  (Docket Entry # 32, Ex. 29).

 Such process more than satisfies the Due Process Clause.

It also eviscerates plaintiff's claim regarding Finglas'

bias.  Moreover, the degree of Finglas' bias, if any, stems from

the letter plaintiff attached to the October 13, 2008 letter she

delivered to each Board member.  (Docket Entry # 7).  Plaintiff

submitted the letter after Finglas put plaintiff on

administrative leave and after Finglas issued plaintiff the

September 19, 2008 written directive to cease harassing staff

and clients.  Further, the incident involving Finglas predated

plaintiff's hearing by three years and was unrelated to the

complaints of plaintiff's job performance and conduct.  Cf.

Arnett v. Kenney, 416 U.S. 134, 197 (1974).  In addition,

Finglas was not the only decision maker.  The matter was put

before the Board whether to accept or reject Finglas'

recommendation to terminate plaintiff.  The five member Board

voted unanimously to terminate plaintiff.  Accordingly, Finglas'

alleged bias does not create a trial worthy issue regarding a

lack of due process.

It is also worth noting that, as Town Administrator, Finglas had the authority to investigate any alleged wrongful conduct by an employee recommended for dismissal, to recommend the dismissal of such employee to the Board and to terminate the employee where, as here, the Board decided to accept such recommendation.  (Docket Entry ## 32, Ex. 9 & 10).  Finglas' actions were not outside the scope of his duties as Town Administrator when he investigated the allegations of plaintiff's misconduct at the Senior Center, found just cause to recommend plaintiff's dismissal to the Board and, having obtained the unanimous authorization from the Board, terminated plaintiff's employment.

Turning to the stenographer argument, plaintiff complains about the lack of a stenographer for the November 3 and 6, 2008 hearings.  She points out that transcripts would have allowed her to prepare for the December 16, 2008 hearing before the Board during which the Board accepted Finglas' dismissal recommendation.

The pre-termination process "need only include oral or written notice of the charges, an explanation of the employer's evidence and an opportunity for the employee to tell his side of the story."  Gilbert v. Homar, 520 U.S. 924, 929 (1997).  Pre-termination hearings are needed to balance "competing interests

27

at stake:  the private interest in retaining employment, the
governmental interests in expeditious removal of unsatisfactory
employees, the avoidance of administrative burdens and the risk
of an erroneous termination." Loudermill, 470 U.S. at 532.  "To
require more than this [notice and pre-termination hearing]
prior to termination would intrude to an unwarranted extent on
the government's interest in quickly removing an unsatisfactory
employee." Id. at 546.  Plaintiff is therefore not entitled to
a stenographer or a transcript inasmuch as the Town is only
required to provide plaintiff with notice and a hearing prior to
termination.

In sum, the due process claim against the Town in Count One
does not survive summary judgment.  Plaintiff does not have a
reasonable expectation in continued employment.  In the
alternative, plaintiff received all the process that was due.

B.  Wrongful Termination – Retaliation (Count Two)

Count Two does not cite a statute or common law cause of
action for the "wrongful termination" claim against the Town
based on "retaliation." (Docket Entry # 1).  The claim,
however, parallels the charge in the MCAD complaint.  Mindful of
plaintiff's pro se status, this court therefore construes the
claim as brought under Massachusetts General Laws chapter 151B

28

("chapter 151B") and 42 U.S.C. § 2000e-1 ("Title VII") as well
as the common law based on a violation of public policy.

The Town argues the statutes of limitations applicable to
claims brought under chapter 151B and Title VII bar these causes
of action. (Docket Entry # 28). The Town also argues the claim
fails on the merits because plaintiff cannot establish that she
engaged in protected activity or that her termination was
causally related to any alleged protected activity.[7] (Docket
Entry # 28).

Title VII and chapter 151B each "require plaintiff to file
claims with the Equal Employment Opportunity Commission
[("EEOC")] and the MCAD before filing suit in court and within
300 days of complained acts of discrimination." Diaz v. Jiten
Hotel Mgmt, Inc., 762 F.Supp.2d 319, 327 (D.Mass. 2011); see 42
U.S.C. § 2000e-5(e); Mass. Gen. L. ch. 151B, § 5; Windross v.
Barton Protective Serv., Inc., 586 F.3d 98, 102 (1st Cir. 2009)
("Massachusetts law . . . requires a claimant to file a Charge
of Discrimination with [the MCAD] within 300 days of the alleged
discriminatory act"); Alston v. Massachusetts, 661 F.Supp.2d
117, 123 (D.Mass. 2009) (the "plaintiff must file a Title VII or

---

[7] The Town, in its supporting memorandum, submits the
possibility that Count Two raised a state whistleblower statute
issue. Plaintiff does not address or rely on the state
whistleblower statute in any of her opposition briefs.
Accordingly, it is not part of Count Two.

151B claim within 300 days of the discriminatory act"). The

plain language of chapter 151B states that, "any complaint filed

pursuant to this section must be so filed within 300 days *after*

*the alleged act of discrimination.*" Mass. Gen. L. ch. 151B, § 5

(emphasis added). Title VII likewise states that the:

> charge shall be filed by or on behalf of the person
> aggrieved within three hundred days *after the alleged*
> *unlawful employment practice* occurred, or within thirty
> days after receiving notice that the State or local agency
> has terminated the proceedings under the State or local
> law, whichever is earlier . . ..

20 U.S.C. § 2000e-5(e) (emphasis added). "Only incidents that

took place within the timely filing period are actionable."

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

"Discrete discriminatory acts are not actionable if time barred,

even when they are related to acts alleged in timely filed

charges." Id. at 113. "Discrete acts such as termination . . .

are easy to identify. Furthermore, each incident of

discrimination and each retaliatory adverse employment decision

constitutes a separate actionable 'unlawful employment

practice.'" Id. at 114.

Plaintiff was terminated on December 17, 2008. (Docket

Entry # 32, Ex. 29). She was therefore required to file the

charge of discrimination with the MCAD within 300 days of the

unlawful employment practice. The December 17, 2008 termination

was the final discrete act to trigger the running of the 300 day

period.  Plaintiff did not file the charge with the MCAD until
December 10, 2009, 360 days after her termination.  (Docket
Entry # 32, Ex. 32).  Plaintiff is therefore barred from filing
Title VII and chapter 151B claims because she failed to file the
charge within the 300 day period.

In the MCAD charge, however, plaintiff argues she timely
filed her charge "within the 300 days of the Superior Court
decision."  (Docket Entry # 32, Ex. 32 & 33).  The MCAD charge
identifies the decision as "an appeal for Judicial Review on
January 9, 2009 with the Plymouth Superior Court" which
dismissed the case on "July 30, 2009."  (Docket Entry # 32, Ex.
32).  Although the July 30, 2009 Superior Court decision is
within the 300 day period, "the discriminatory act occurred on
the date of termination, the date the parties understood the
termination to be final."  Electrical Workers v. Robbins &
Myers, Inc., 429 U.S. 229 (1976) (for purposes of timely filing
an EEOC complaint, the date of employee's discharge is the date
of the alleged unlawful employment practice, not the date of the
conclusion of arbitration after discharge).

Finally, although not explicitly stated in Count Two,
plaintiff's opposition to summary judgment asserts that the Town
terminated her in violation of public policy.  (Docket Entry #
33).  Plaintiff maintains that because "liability may be imposed

on an employer if an at will employee is terminated for a reason
that violates a clearly established public policy," her
termination after reporting "certain illicit wrongdoings by her
immediate supervisor and the town manager [falls] well within
the purview of protection afforded to her by case law."  (Docket
Entry # 33).

Massachusetts courts recognize that "an at will employee
has a cause of action for wrongful termination only if the
termination violates a clearly established public policy."  King
v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994).  Massachusetts
courts, however, interpret the public policy exception narrowly.
Id.  Specifically, the doctrine protects employees asserting "a
legally guaranteed right (e.g., filing a workers' compensation
claim), for doing what the law requires (e.g., serving on a
jury) or for refusing to do what the law forbids (e.g.,
committing perjury)."  Smith-Pfeffer v. Superintendent of the
Walter E. Fernald State Sc., 533 N.E.2d 1368, 1368 (Mass. 1989).
The public policy exception is interpreted narrowly because to
do otherwise would "convert the general rule" into a rule that
requires just cause to terminate an at will employee.  Id.; see
Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241,
1245 (Mass. 1992) (where nurse reported internal problems to
high level officials within organization, reports were internal

matter which could not provide basis for public policy exception); Smith-Pfeffer, 533 N.E.2d at 1368 (where employee expressed disagreement with superior's management of school, even if appropriate and socially desirable conduct, termination not wrongful because school management was internal matter); Mistishen v. Falcone Piano Co., 630 N.E.2d 294, 296 (Mass.App.Ct. 1994) (discharge of employee who threatened to reveal employer's unfair and deceptive trade practices which were not a threat to public health or safety was not wrongful because situation did not rise to requisite level of public importance).

Here, the facts do not create a trial worthy issue that plaintiff was terminated for asserting a legally guaranteed right, for abiding the law or for refusing to violate the law. Plaintiff alleges she was terminated only after she revealed inculpatory information of the "known illicit conduct" (Docket Entry # 32, Ex. 1 p. 190) about Finglas and Smith to Meredith Marini ("Marini"), the Town of Hanson Administrative Secretary. (Docket Entry # 1). Plaintiff's report of an internal incident involving Finglas and Smith does not fall within the narrow interpretation of the public policy exception. The report of a known incident of potentially prohibited discrimination occurring years before the allegedly wrongful termination does

not fall within the scope of the narrowly construed public
policy exception.  In addition, plaintiff did not report the
conduct until after Finglas placed her on administrative leave
and after he wrote the September 19, 2008 letter.  Count Two is
therefore subject to summary judgment as to the Town.

    C.  <u>Breach of Implied Covenant of Good Faith and Fair</u>
<u>Dealing (Count Three)</u>

    The Town argues that the claim for breach of implied
covenant of good faith and fair dealing is subject to summary
judgment because plaintiff was an employee at will.  (Docket
Entry # 28).  Plaintiff argues that even though she was an
employee at will, she had an implied contract that affords her
an implied covenant of good faith and fair dealing that the Town
breached.

    Massachusetts law implies a covenant of good faith and fair
dealing in every contract, "including contracts for employment
at will."  <u>Artuso v. Vertex Pharmaceuticals, Inc.</u>, 637 F.3d 1, 8
(1st Cir. 2011).  In the context of at will employment, however,
Massachusetts law gives the employer "'an unfettered right to
discharge' an at will employee."  <u>Id.</u> at 8.  The implied
covenant of good faith and fair dealing therefore provides only
a limited exception to the employer's unfettered right by
allowing the discharged employee to "recover 'unpaid

compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed.'"  Id. at 8-9; see Orioles v. Mass Mutual Fin. Group, 2011 WL 4744913, *3 (D.Mass. Sept. 6, 2011) (under covenant, "discharged at will employee may recover 'unpaid compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed'").  An employer therefore breaches the implied covenant of good faith and fair dealing "when it dismisses an at will employee in order to deprive him of compensation fairly earned and legitimately expected for services already rendered." Cochran v. Quest Software, Inc., 328 F.3d 1, 8 (1st Cir. 2003).

Plaintiff makes no claim for unpaid compensation for work she already performed.  Count Three is therefore subject to summary judgment as to the Town.

D. Termination without Just Cause (Count Four)

The Town argues that the claim for termination without just cause fails because plaintiff was an employee at will. (Docket Entry # 28).  The Town contends she had no employment contract and the Town had just cause to terminate her. (Docket Entry # 28).

Plaintiff argues there was an implied contract of employment based upon "the circumstances of her employment,

including her yearly salary and job description." (Docket Entry
# 1). Accordingly, she could not be terminated without just
cause, which she argues the Town did not have. (Docket Entry #
1).

As discussed previously, plaintiff did not have an
employment contract and does not fall within the limited
exception of a terminated employee owed past compensation for
services already rendered. (Docket Entry # 32, Ex. 1, p. 148).
Plaintiff also admitted she was an employee at will who could be
terminated at any time for any reason. (Docket Entry # 32, Ex.
1, p. 148). Count Four therefore fails to withstand summary
judgment as to the Town.

In the alternative, the Town argues that there was just
cause to terminate plaintiff even if she could establish an
implied contract. (Docket Entry # 29). For purposes of
argument only, this court assumes that section 8G of the Town's
personnel classification and compensation by-law requires just
cause to terminate plaintiff. Under Massachusetts law, the
controlling standard for just cause is set out in Klein v.
President and Fellows of Harvard College, 517 N.E.2d 169, 170
(Mass.App.Ct. 1987). The Klein decision explains that:

> Terms such as "just cause" and like phrases have been
> construed in similar or analogous contexts as meaning:
> "[T]here existed (1) a reasonable basis for employer
> dissatisfaction with a new employee, entertained in good

faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business.  Discharge for a 'just cause' is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith."

Id. (quoting G & M Emp't Serv., Inc. v. Comm., 265 N.E.2d 476, 478 (Mass. 1970)).

The factors that led to plaintiff's dismissal were laid out in the charges brought against her by the Town.  These charges were:  (1) neglecting "duties on June 19, 2008 [which] caused an elderly client to be lost for almost two hours"; (2) admitting to smoking marijuana, coming to work smelling of marijuana and issues regarding the potential delivery of a "pot grinder" to the Senior Center; (3) abusing break times and leaving clients unattended resulting in schedule changes for the Monday-Thursday staff which plaintiff then confronted management about on multiple occasions; (4) making a harassing telephone call to McCarey at work; and (5) disobeying a directive by the Town Administrator.  (Docket Entry # 32, Ex. 2 & 25).  All of these charges find support in the record and fall well within the Klein standard for just cause.

Plaintiff also alleges she was terminated after speaking out about Smith and Finglas and that an investigation was only done after she provided "incriminating information" about Smith

and Finglas to Marini and Egan. (Docket Entry # 1).  Plaintiff,
however, admitted to engaging in conduct that falls within the
reach of each charge although she denies certain details.
(Docket Entry # 32, Ex. 1, pp. 59-62, 67, 71-72, 74-76, 80-81,
104, 107-109, 111, 116, 120, 131 & 182-187).  In particular,
plaintiff admitted to leaving work, albeit for five minutes, to
renew library books during working hours and that a client went
missing during this time period.  (Docket Entry # 32, Ex. 1, pp.
59-62).  She also admitted to coming to work smelling like
marijuana on at least one occasion, although there is a
discrepancy regarding the date when this incident took place.
(Docket Entry # 32, Ex. 1, pp. 120, 182 & 183).  Plaintiff
admits to being upset about the scheduling of break times and
coming in on days she was not scheduled to work and confronting
management about her complaints.  (Docket Entry # 32, Ex. 1, pp.
87 & 89-90).  Plaintiff also admits to telephoning McCarey and
harassing McCarey at work while plaintiff was on paid
administrative leave.  (Docket Entry # 32, Ex. 1, pp. 187)
(Docket Entry # 32, Ex. 28).  Finally, she acknowledges
violating the directive by the Town Administrator by telephoning
an employee of the Senior Center trying to get her to testify on
plaintiff's behalf.  (Docket Entry # 32, Ex. 1, pp. 131 & 187).

All of this conduct gives the Town ample "just cause" to terminate plaintiff.  Summary judgment is therefore warranted in the Town's favor with respect to Count Four.

E.   Intentional Infliction of Emotional Distress (Count Five)

The Town next argues that the intentional infliction of emotional distress claim is subject to summary judgment because it is barred by the Massachusetts Tort Claims Act.  (Docket Entry # 28).  In opposing summary judgment, plaintiff reasserts the allegations she made in the complaint.  (Docket Entry # 33).  Plaintiff alleges that "defendants' act of discrimination against her after she reported acts of misconduct involving Smith were extreme and outrageous."  (Docket Entry # 1).  Further, plaintiff alleges that, "defendants knew or should have known that their extreme and outrageous behavior would cause her to suffer severe emotional distress."  (Docket Entry # 1).

Under the Massachusetts Tort Claims Act, it is well settled that a public employer cannot be sued for intentional tort claims.  Mass. Gen. L. ch. 258, § 10(c) ("MTCA"); Lafayette Place Association v. Boston Redevelopment Authority, 694 N.E.2d 820, 836 (Mass. 1998); Petricca v. City of Gardner, 429 F.Supp.2d 216, 224 (D.Mass. 2006).  The Town is a public employer as a matter of law.  Mass. Gen. L. ch. 258, § 2.  As

such, it cannot be sued for intentional torts such as
intentional infliction of emotion distress.  Count Five is
therefore subject to summary judgment as to the Town.

II.   <u>FINGLAS AND SMITH'S SUMMARY JUDGMENT MOTION</u>

    A.   <u>Procedural Due Process (Count One)</u>

    As previously noted, plaintiff alleges she was "denied her
procedural due process" when defendants "refused" to produce
transcripts of her hearings and did not honor her "requests for
these transcripts."  (Docket Entry # 1).  She also contends
Finglas was biased.  According to plaintiff, Finglas' and
Smith's "purposeful and willful behavior denied her a valuable
property right under the United States Constitution and the
Massachusetts Declaration of Rights."  (Docket Entry # 1).

    In seeking summary judgment, Finglas and Smith incorporate
all of the arguments made by the Town in its supporting
memorandum (Docket Entry # 29).  (Docket Entry # 31).  For the
reasons fully explained in part I(A)(2), plaintiff, an employee
at will, does not have a constitutionally protected interest in
her employment.  Even if she did have such an interest she
received all the process she was due under the Due Process
Clause.  Neither Finglas' alleged bias nor the absence of a
stenographer or transcript is required.

In short, Count One does not withstand summary judgment with respect to Finglas and Smith for the same reasons the count does not withstand the Town's summary judgment challenge. Accordingly, it is not necessary to address the additional arguments posed by Finglas and Smith based on Finglas' qualified immunity and Smith's lack of participation.

B.  <u>Wrongful Termination – Retaliation (Count Two)</u>

Finglas and Smith argue that the wrongful termination-retaliation claim is subject to summary judgment if brought under Title VII[8] because the statute only applies to employers, not individuals.  (Docket Entry # 30).  Smith also argues plaintiff failed to exhaust her administrative remedies as to Smith by not naming her in the administrative charge.  (Docket Entry # 30).  Additionally, Smith contends she played no role in any alleged wrongful acts.  (Docket Entry # 30).

Plaintiff asserts she was wrongfully terminated from her position as a direct result of providing incriminating information about Smith and Finglas to Marini.  (Docket Entry # 1).  Additionally, plaintiff alleges that only after she disclosed allegations about Smith and Finglas was she subjected

---

[8]  Finglas and Smith, in their supporting memorandum, submit the possibility that Count Two raised a state whistleblower statute issue.  Plaintiff does not address or rely on the state whistleblower statute in any of her opposition briefs. Accordingly, it is not part of Count Two.

to an investigation by Finglas, which resulted in a retaliatory termination of her employment by Finglas.  (Docket Entry # 1). Plaintiff therefore contends that Smith and Finglas are liable for wrongful termination in violation of Title VII, chapter 151B or the common law based on a violation of public policy because Smith and Finglas terminated plaintiff in retaliation for plaintiff submitting the incriminating letter to each Board member.  (Docket Entry ## 33 & 37).

As noted previously, Finglas and Smith incorporate the arguments made by the Town with respect to its summary judgment argument.  (Docket Entry # 29).  Thus, for the reasons fully explained in part I(B), plaintiff's Title VII and chapter 151B claims do not withstand summary judgment because plaintiff failed to file the charge within the 300 day period. Additionally, as also previously discussed in part I(B), the facts do not provide a basis for a wrongful termination claim based on a public policy violation.

Count Two against Finglas and Smith is therefore subject to summary judgment.  It is therefore not necessary to address the additional arguments posed by Finglas and Smith with respect to Count Two.

C.  Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

Finglas and Smith argue that the breach of implied covenant of good faith and fair dealing claim is subject to summary judgment because plaintiff was an employee at will, she had no employment contract and there was just cause to dismiss her (Docket Entry # 29).  (Docket Entry # 31).  Finglas and Smith additionally maintain they are not parties to any alleged contract nor actors who could have breached an implied covenant. (Docket Entry # 35 & 34).  Smith also argues she played no role in plaintiff's termination.  (Docket Entry # 31).

Plaintiff alleges Finglas and Smith lacked good faith and fair dealing in their conduct towards her as agents of the Town. (Docket Entry # 33).  She alleges Finglas had improper and retaliatory motives against her when he conducted his investigation after plaintiff had provided incriminating information about Finglas to Marini.  (Docket Entry # 1). Plaintiff claims this was proof of Finglas' lack of good faith of his investigation against her.  (Docket Entry # 1). Furthermore, plaintiff also points out she was never disciplined until after she voiced complaints about Smith and Finglas to Marini and was thereafter wrongfully terminated.  (Docket Entry # 1).  She also provided a number of letters written by former co-workers alleging incidences where Finglas and Smith harassed employees.  (Docket Entry # 33, Ex. B, C, D, E & F).

43

As explained in part I(C), Massachusetts law provides the employer "'an unfettered right to discharge' an at will employee." Artuso, 637 F.3d at 8.  The covenant runs between the employer and the employee.  See Nadberny v. Roseland Prop. Co., Inc., 390 F.3d 44, 52 (1st Cir. 2004).  The Town and plaintiff are the parties to the employment contract, if any. The Board is the appointing authority of plaintiff's position. (Docket Entry # 32, Ex. 6) (Docket Entry # 32-6).  Plaintiff does not dispute that the Board voted to accept Finglas' recommendation to terminate her employment.  Finglas could not act without the Board's approval and authority.  Smith was a Department Head who only had the authority to recommend employees for termination, not terminate employees.  Finally, plaintiff signed the pre-employment statement that she understood that it was "the Town" that could terminate her employment.  (Docket Entry # 32, Ex. 36).  She also understood that no "representative of the Town" could make any different employment agreement.  (Docket Entry # 32, Ex. 36).  The contract and therefore the implied covenant thus ran between the Town and plaintiff as opposed to the individual defendants. Accordingly, neither Finglas nor Smith had a duty of good faith and fair dealing.

In any event, the covenant was not breached.  As discussed
in the next section, there was "just cause" for the termination.
Moreover, plaintiff was not owed compensation for past work.
Consequently, she does not fall within the exception to at will
employment under which a breach of the covenant occurs.  For
reasons expressed in part I(C), therefore, there was no breach.
Count Three is therefore subject to summary judgment as to
Finglas and Smith.

    D.  <u>Termination without Just Cause (Count Four)</u>

Finglas and Smith argue there was just cause to terminate
plaintiff's employment.  (Docket Entry # 31).  They also point
out that plaintiff failed to present any evidence to support
this count.  (Docket Entry # 31).  Smith also contends she did
not participate in plaintiff's termination.  (Docket Entry #
31).

Plaintiff asserts she was wrongfully terminated without
just cause.  (Docket Entry # 1).  She alleges she had an implied
contract of employment based on the nature of her employment
that included a yearly salary and job description.  (Docket
Entry # 1).  As discussed in part I(D), plaintiff was an
employee at will and therefore could be terminated without cause
at any time.  In the alternative, part I(D) explains that the
Town had "just cause" to terminate her employment.  Finglas and

Smith incorporated the Town's arguments into their summary judgment motion.  Hence, for the reasons set out in part I(D), Count Four does not withstand Finglas' and Smith's summary judgment motion.

E.   Intentional Infliction of Emotional Distress (Count Five)

Finglas and Smith argue that the intentional infliction of emotional distress claim is subject to summary judgment because the MTCA bars intentional tort claims against individual public employees in their official capacity, the claim is barred by the Workers Compensation Act's ("WCA")[9] exclusivity provision and plaintiff failed to provide evidence of Finglas' and Smith's extreme or outrageous conduct.  (Docket Entry ## 31, 34 & 35).

For plaintiff to recover under the tort of intentional infliction of emotional distress, she must show that:  (1) the defendants intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result based on their conduct; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' actions caused her distress; and (4) the emotional distress suffered by her was severe and of a nature that no reasonable person could be expected to endure it.  See Gouin v. Gouin, 249 F.Supp.2d 62, 73 (D.Mass. 2003) (citing Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-319

---

[9]   The WCA is codified at Massachusetts General Laws chapter 152.

(Mass. 1976)).  As correctly stated by Finglas and Smith (Docket
Entry # 31) a defendant's liability for intentional infliction
of emotional distress:

> cannot be predicated on "'mere insults, indignities,
> threats, annoyances, petty oppressions or other
> trivialities' nor even is it enough 'that the defendant has
> acted with an intent which is tortious or even criminal, or
> that he has intended to inflict emotional distress, or even
> that his conduct has been characterized by malice or a
> degree of aggravation which would entitle the plaintiff to
> punitive damages for another tort.'"

Tetrault v. Mahoney, Hawkes & Goldings, et al., 681 N.E.2d 1189,
1197 (Mass. 1997) (quoting Foley v. Polaroid Corp., 508 N.E.2d
72, 82 (Mass. 1987)).  Furthermore, the First Circuit has
consistently found that actions and statements by employers in
connection with employment disputes fail to constitute the
required extreme and outrageous conduct.  See Marques v.
Fitzgerald, 99 F.3d 1, 7 (1st Cir. 1996) (finding that while
termination may not have been pleasant for the plaintiff,
evidence did not show that jury could find extreme and
outrageous conduct).

Plaintiff failed to sufficiently allege any extreme or
outrageous acts perpetuated by Finglas or Smith.  The statements
and acts of Finglas and Smith in the summary judgment record do
not rise to the level of extreme and outrageous.  (Docket Entry
## 33 & 37).

In the alternative, the MTCA bars plaintiff from pursuing the claim against Finglas and Smith in their official capacity. Intentional infliction of emotional distress is one of the torts listed in section 10(c) of the MTCA.  Mass. Gen. L. ch. 258, § 10(c).  Under the MTCA, an entity cannot be held liable for an intentional tort claim.  Mass. Gen. L. ch. 258, § 1. Additionally, the MTCA also bars "any claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." Mass. Gen. L. ch, 258 § 10(b).  Bringing a claim against a Town employee in his or her official capacity equates to bringing a claim against the entity.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("official-capacity suit is, in all respects . . . , to be treated as a suit against the entity").  Hence, an individual acting in his or her official capacity as a Town employee cannot be held liable for an intentional tort claim. Howcroft v. City of Peabody, 747 N.E.2d 729, 747 (Mass.App.Ct. 2001) (MTCA bars the intentional infliction of emotional distress claim against city and "like claims" against police department officers).

As previously stated, Finglas and Smith are both employees of the Town and acted within the official capacities of their jobs throughout the termination process and during the time period leading up to that process.  As the summary judgment target, plaintiff failed to present evidence that either individuals acted in a manner outside the scope of his or her official capacity in regard to either disciplining plaintiff or participating in the termination process.  As discussed previously, Finglas' and Smith's actions during the dismissal process were in the course and scope of their employment responsibilities and authority as outlined in the Town's by-laws and disciplinary policy.  (Docket Entry # 32, Ex. 8 & 9).

In addition to the MTCA, the exclusivity provision of the WCA bars the claim against Finglas and Smith for actions taken within the scope of their employment.  The WCA applies when a worker "receives personal injury arising out of and in the course of his employment."  Mass. Gen. L. ch. 152, § 26.  Failure to provide written notice at the start of employment that an employee wishes to retain her rights at common law results in a waiver of "any right created by statute, at common law, . . . including, but not limited to claims for damages due to emotional distress, . . . or the like, when such loss is a result of any injury to the employee that is compensable under

this chapter." Mass. Gen. L. ch. 152, § 26; see <u>Andresen v.</u>
<u>Diorio</u>, 349 F.3d 8, 15-16 (1st Cir. 2003) (dismissing intentional infliction of emotional distress claim as precluded by WCA); <u>HDH</u>
<u>Corp. v. Atlantic Charter Ins. Co.</u>, 668 N.E.2d 872, 874 (Mass. 1996) (employee's remedy for emotional injury based on bad faith termination is barred by WCA's exclusivity provision), <u>reversed</u>
<u>in part on other grounds</u>, 681 N.E.2d 847 (Mass. 1997). Plaintiff in this case has neither alleged nor established that she provided written notice to the Town that she wished to retain her rights at common law. Count Five is therefore subject to summary judgment to Finglas and Smith.

CONCLUSION

In accordance with the foregoing discussion, the Town's motion for summary judgment (Docket Entry # 28) is **ALLOWED** on all counts. Similarly, in accordance with the foregoing discussion, Finglas and Smith's motion for summary judgment (Docket Entry # 30) is **ALLOWED** on all counts.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge